IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE GUY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:15-cv-00539-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

## I.    Introduction

The plaintiff, Jacqueline Guy, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Ms. Guy timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Guy was forty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision.  (Tr. at 58, 173.)  She has a high school education and no past relevant work experience.  (Tr. at 51, 85, 174.)  Ms. Guy claims that she

became disabled on December 15, 2010, due to depression and anxiety.  (Tr. at 173, 199.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA").  *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments.  *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The decision depends on the medical evidence contained in the record.  *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Guy meets the nondisability requirements for a period of disability and DIB and was insured through the date of the decision. (Tr. at 51.) He further determined that Ms. Guy has not engaged in SGA since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's depressive disorder, panic disorder, status post right ankle fracture, hypertension, and obesity are considered "severe" based on the requirements set forth in the regulations. (*Id.* at 52.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 2. (*Id.* at 53.) The ALJ did not find Ms. Guy's allegations to be totally credible, and he determined that she has the following RFC:

> To perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following abilities, limitations and restrictions:

pushing/pulling and foot control operation on the right side limited to no more than occasional; climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling are limited to no more than occasional; no climbing of ladders, ropes or scaffolds; no exposure to unprotected heights or uneven terrain; avoid any more than occasional exposure to extreme cold or heat; can understand, remember and carry out simple instructions with no more than occasional decision making and changes; no more than occasional interaction with the public, coworkers and supervisors; and no tandem tasks required to do the duties of the job.

(Tr. at 54.)

According to the ALJ, Ms. Guy has no past relevant work, she is a "younger individual age 18-49," she has a high school education, and she is able to communicate in English, as those terms are defined by the regulations. (Tr. at 57.) He determined that "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocational Rule 202.20 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as electrical assembler, marker, and food preparer. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, From December 15, 2010, through the date of this decision." (*Id.*)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the

proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  Discussion

Ms. Guy alleges that the ALJ's decision should be reversed and remanded for several reasons. First, Plaintiff contends that the ALJ did not properly consider treatment notes from West Alabama Mental Health Center. Second, she believes that the ALJ did not properly evaluate the opinion of Dr. Donald W. Blanton. Third, she argues that the ALJ did not sufficiently develop the record. Fourth, she states that her testimony supports her claims of disabling mental symptoms and thus implies that the ALJ erred in finding her testimony not entirely credible. Fifth and finally, she contends the ALJ did not consider or discuss Dr. Blanton's second opinion submitted after her administrative hearing.

A.    **Consideration of Treatment Notes from West Alabama Mental Health Center**

As the ALJ noted, Plaintiff began receiving services in October 2011 at West Alabama Mental Health Center for a diagnosed depressive disorder. (Tr. at 52.) In November 2011, treatment notes showed a Global Assessment of Functioning ("GAF") score of 45, which indicates serious symptoms. (Tr. at 238.) On January 5, 2012, while Plaintiff reported doing okay she also noted mood swings, ongoing depressive moods, increased stress, feeling that "she's just sitting on earth and not really accomplishing anything," questioning her purpose, feeling that nothing excites her, problems focusing, and relational problems. (Tr. at 255). However, in February 2012, while she cited some of the same problems, she also reported doing okay, and exhibited normal affect, proper orientation, calm motor activity, good sleep and appetite, and no suicidal or homicidal ideation. (Tr. at 254-55.) By March 2012, treatment notes showed a GAF of 55, which indicates only moderate symptoms. (Tr. at 235.) On March 27, 2012, a psychiatrist at the center prescribed Paxil and Vistaril. (Tr. at 237.) By May 2012, she reported sleeping better and feeling okay. (Tr. at 232.) She denied hearing voices or having homicidal thoughts or suicidal thoughts. (*Id.*) Later in May 2012, treatment notes show Plaintiff complied with her medication regime, but that she experienced increased depressive moods. (Tr. at 231.) The notes further explain that her moods were

manageable, except for crying episodes. (*Id.*) In May 2012, the psychiatrist refilled her prescriptions for Paxil and Vistaril. (Tr. at 232.) In August 2012, while she reported lack of interest in forming friendships and constant worrying, she also reported no suicidal or homicidal thoughts and that she was generally doing okay. (Tr. at 335.) In September 2012, she reported again that she was doing okay but that she had some depression. (Tr. at 334.) The next month, she reported doing okay and complying with her medication regime. (Tr. at 333.) At that time, she showed normal affect and proper orientation to person, place, time, and situation. (*Id.*) Later that month she again reported doing "good." (Tr. at 342.) However, she also reported that she was having relationship issues and stated that she believes that others think she is "stupid." (Tr. at 333). On November 19, 2012, she noted that she was doing okay and feeling better "because others haven't been critical." (Tr. at 355). On January 2, 2013, she again said she was doing okay but felt uncomfortable around others. (Tr. at 332). On February 22, 2013, she reported doing okay but that her mood was depressed and she was frustrated. (Tr. at 348). By April 2013, she was still doing okay and exhibited normal affect, no hallucinations, and showed proper orientation. (Tr. at 344.) On May 24, 2013, she stated that she was doing okay but also noted some panic attacks, daily stressors, daily depressive moods and social isolation. (Tr. at 369). Throughout her monthly

visits until September 2013, she continued to report that she was doing okay but that she still suffered from some of the same problems such as poor sleep and depressed mood.

The ALJ considered the above-referenced treatment notes in evaluating whether Plaintiff had any severe impairment. He found it important that her GAF score quickly improved from a 45 in November 2011 to a 55 in March 2012, apparently due to medication and counseling. (Tr. at 52.) He further stated that while the records showed "some waxing and waning of symptoms, . . . generally the claimant was reported to be compliant with medication an doing 'ok.'" (*Id.*)

Plaintiff argues that these records suggest that her condition deteriorated, rather than improved, from 2011 to 2013. However, the Court cannot say that substantial evidence does not support the ALJ's analysis of these treatment records.  *See Dyer*, 395 F.3d at 1212 (noting that even if the court disagrees with the ALJ's resolution of the factual issues and would resolve those disputed factual issues differently, his decision must be affirmed where it is supported by substantial evidence in the record as a whole).

### B.    Dr. Blanton's Opinion

On May 30, 2012, Dr. Blanton conducted a mental evaluation of Ms. Guy at the request of the State Agency Disability Determination Service. (Tr. at 256-60.)

As the ALJ noted, his examination showed signs for diagnosed depressive disorder and panic disorder without agoraphobia. (Tr. at 260.) He assessed a GAF score of 50. (*Id.*) In evaluating his opinion, the ALJ noted that he is a Licensed Professional Counselor and not a Licensed Clinical Psychologist. (Tr. at 56.) The Social Security administrative regulations explain that licensed therapists are not "acceptable medical sources." *See* 20 C.F.R. §§ 404.1513(a), 416.913(a), (identifying acceptable medical sources). Rather, therapists are "other sources" from which the Commissioner *may* use evidence. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Accordingly, Dr. Blanton's opinion was not entitled to any special significance or consideration. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (defining medial opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), . . . .") (emphasis added); *see also* Social Security Rule ("SSR") 06-03p, 2006 WL 2263437, at *2 (S.S.A) (only acceptable medical sources can provide medical opinions and a licensed clinical social worker is a medical "other source," not an acceptable medical source).

Plaintiff argues that because the Social Security Disability Determination Service ordered the evaluation from Dr. Blanton, the Commissioner should not now be able to say that his opinion is entitled to no special weight because he was

merely a therapist. That may be true, but regardless, the ALJ still considered Dr. Blanton's findings, consistent with the regulations, with respect to the severity of Plaintiff's impairments and the effect of her impairments on her functioning. (Tr. at 52, 56). *See* 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1); SSR 06-03p, 2006 WL 2263437, at *2. The ALJ emphasized that while Dr. Blanton reported a GAF score, he did not offer an opinion on any of Plaintiff's functional limitations. As the ALJ noted, GAF scores may be helpful in formulating an RFC, but a low GAF score, standing alone, does not evidence an impairment seriously interfering with a claimant's ability to work.  (Tr. at 55.) In *Wind v. Barnhart*, the Eleventh Circuit noted that the Social Security Administration has declined to endorse GAF scores for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (per curiam) (citing 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). Therefore, even if Dr. Blanton's opinion had been entitled to the weight given to acceptable medical sources, the ALJ still applied the proper standards in evaluating Dr. Blanton's opinion and substantial evidence supports his evaluation.

### C.    Failure to Develop the Record

Plaintiff asserts that the ALJ needed to have ordered a mental health evaluation in order to properly evaluate her claim, either from Dr. Blanton or from another medical source he would deem acceptable. The ALJ has a duty to develop the facts fully and fairly and to probe conscientiously for all of the relevant information. *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). However, in all social security disability cases, the claimant bears the ultimate burden of proving disability and is responsible for furnishing or identifying medical and other evidence regarding her impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 42 U.S.C. § 423(d)(5). Further, Plaintiff was represented at the administrative level. (Tr. at 63-90.) As such, the ALJ did not have any sort of heightened duty to develop the record on Plaintiff's behalf. *See Leiter v. Comm'r of Soc. Sec.*, 377 F. App'x 944, 949 (11th Cir. 2010). Where the ALJ's findings are supported by evidence sufficient for a decision, the ALJ is not obligated to seek additional medical testimony. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

Furthermore, before remanding for further development of the record, a reviewing court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir.1982) (quoting *Ware*, 651 F.2d at 413). "Although the ALJ has a duty to

develop a full and fair record, there must be a showing of prejudice before [a reviewing court] will remand for further development of the record." *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

Despite Plaintiff's contentions, the ALJ had sufficient evidence in the record on which to evaluate Plaintiff's mental impairments. The ALJ discussed significant mental health evidence contained in the record that related to the period at issue in this case. As the ALJ observed, Plaintiff did not seek mental health treatment until October 2011, and while the treatment notes from West Alabama Mental Health Center showed some mental "ups and downs," they also showed general improvement and that Plaintiff has been relatively stable on medication. (Tr. at 228-55, 333-55, 362-70.)

### D.    Credibility

Plaintiff states that her testimony provides insight into her mental functional limitations, and thus implies that the ALJ erred in making his credibility determination. In her Function Report on May 3, 2012, Ms. Guy reported she would eat a bowl of cereal in the morning, take her medications, and watch television. (Tr. at 203). She did not take care of any other people or any pets; stress and anxiety woke her up during the night about every two hours; and at times she

did not want to bathe or care for her hair. (Tr. at 204). She required reminders to take her medication. The only meals she could prepare were sandwiches or frozen dinners. She tried to do laundry and housework but did not finish what she started. (Tr. at 205). She did not like to drive because she got nervous. She could shop for grocery items, but it would take two and half to three hours because she could not make up her mind what to purchase. (Tr. at 206). She reported poor memory and concentration. She had no social activities and liked to stay at home. (Tr. at 207). She reported problems with anger, mood swings, anxiety, depression, stress, memory, concentration, understanding, following instructions and getting along with others. (Tr. at 208). She was easily stressed, angry, frustrated and nervous. She was afraid of large bodies of water, had a fear of dying, and was afraid of something happening to her children or grandchildren. (Tr. at 209). At her hearing, Ms. Guy testified she became unable to work because of anxiety attacks and depression. (Tr. at 68). She testified her daughter lived next door and did her household chores and cooking. (Tr. at 75, 78). She testified to crying easily. (Tr. at 76). She testified she had trouble concentrating and focusing and did not like to be around people. (Tr. at 77). She testified when her daughter was at work she would get assistance from neighbors or her son. (Tr. at 80).

The Social Security Administration's regulations at 20 C.F.R. §§ 404.1529, 416.929 identify how the agency evaluates symptoms, including pain. According to the regulations, statements about pain and other symptoms will not alone establish disability; medical signs or laboratory findings must show there is a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. *See* 20 C.F.R. §§ 404.1529(a), 416.929. If medical signs or laboratory findings demonstrate the existence of such a medical impairment, then the agency will consider the subjective allegations of pain and other symptoms along with all of the other evidence. *Id.* As part of the analysis, the agency will evaluate the intensity and persistence of the claimant's symptoms and the extent to which the alleged symptoms affect the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529, 416.929.

Interpreting these regulations, the Eleventh Circuit held that to establish disability based on testimony of pain and other symptoms, a claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th

Cir. 1991)). The regulations contain the same language as the pain standard. *See Wilson*, 284 F.3d at 1225. Thus, by citing to §§ 404.1529 and 416.929 in his decision, "it is clear that the ALJ applied this Circuit's pain standard." *Wilson*, 284 F.3d at 1226. When evidence documents an impairment that could reasonably be expected to produce the symptoms alleged by a claimant, the Commissioner then evaluates the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's capacity for work. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In making a credibility finding, the ALJ must articulate specific reasons for questioning Plaintiff's credibility, and his reasons for rejecting Plaintiff's testimony must be supported by substantial evidence. *See Dyer*, 395 F.3d at 1210. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In evaluating Plaintiff's subjective complaints, the ALJ examined the evidence of record and found it did not support her allegations. For example, Plaintiff not only testified about her mental impairments but also her physical condition. She testified that pain in her ankle after a car accident was at an "8" out of "10," that she could walk less than a football field, stand up for only 10 minutes at a time, and sit for only 30 minutes at a time, that she had to lie down for three to

four hours a day with her leg elevated for ankle swelling and pain, and that although no doctor prescribed her a cane she purchased one anyway to help her walk. (Tr. at 68-70.) However, the ALJ found these statements less than credible because treatment records indicate that Plaintiff's ankle healed and she made no more than occasional complaints of pain to physicians and was treated conservatively with Motrin. (Tr. at 317-20). Additionally, while Plaintiff testified that her blood pressure medicine and Motrin made her drowsy, the ALJ noted that the record showed no significant medication side effects to corroborate her testimony. (Tr. at 56). As the ALJ observed, none of her treating physicians have indicated that she was unable to perform work related activities or placed any mental or physical restrictions on her, and that in fact treatment records show that Plaintiff was encouraged to increase her activity "without any evidence whatsoever that she needs to lie down as much as half a day watching television with her feet or legs propped up." (Tr. at 56, 323). With specific regard to the ALJ's rejection of her testimony regarding her mental impairments, the ALJ noted that Plaintiff had no mental health treatment until October 2011 and she has improved since that time. (Tr. at 56.) The ALJ's discussion shows that he considered the entire record in evaluating Plaintiff's subjective complaints.

### E.     Consideration of Dr. Blanton's Second Opinion

After her hearing, Ms. Guy had a second examination by Dr. Blanton on October 2, 2013. Dr. Blanton again diagnosed Major Depressive Disorder, recurrent. He also administered IQ testing, resulting in a full scale IQ score of 74 and a diagnosis of borderline intellectual functioning. (Tr. at 384, 386). Dr. Blanton's second report was electronically submitted on October 10, 2013. The ALJ issued an Unfavorable Decision on October 18, 2013, that did not reference Dr. Blanton's second report. Upon inquiry by Plaintiff's attorney, the report was located in the "Case Documents" portion of the electronic folder. The electronic folder indicates the document was received on October 10, 2013.

Plaintiff contends that the ALJ did not consider or discuss Dr. Blanton's October 2, 2013 opinion when he should have. However, Plaintiff concedes that this second examination report was submitted after the hearing. Although the report was submitted before the ALJ rendered his opinion, Plaintiff's counsel did not ask the ALJ to hold the record open at the hearing, nor did he inform the ALJ that he intended to submit additional records. (Tr. at 63-90). In fact, the ALJ asked Plaintiff's counsel whether he had anything to add to the record, and Plaintiff's counsel responded in the negative. (Tr. at 67).

Although the ALJ did not discuss Dr. Blanton's second opinion, the Appeals Council considered the post-hearing evidence, but found that it did not provide a

basis for changing the ALJ's decision. (Tr. at 6). The Appeals Council considers the entire record, including the new, material, and chronologically relevant evidence, and will review the ALJ's decision if it finds the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. *See Ingram v. Comm'r*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R § 404.970(b)). This Court also considers the entire record, including the evidence submitted to the Appeals Council, under the substantial evidence standard, to determine "whether the new evidence renders the denial of benefits erroneous." *Id.* at 1262-63, 1266-67.

The additional evidence Plaintiff submitted does not demonstrate that substantial evidence did not support the ALJ's decision the Appeals Council properly denied review. *See* 20 C.F.R. §§ 404.970(b), 416.1570(b). Plaintiff contends that this report deserves additional consideration because Dr. Blanton offered a functional assessment, which the ALJ had noted was not contained in Dr. Blanton's first report. The second time around, the therapist stated that Ms. Guy had

> marked limitations that seriously interfere with her ability to perform work-related activities on a day-to-day basis in a regular work setting in the following areas: understand detailed or complex instructions, use judgment in detailed or complex work-related decisions, respond [to] customary work pressure, maintain attention and concentration and pace for a period of at least two hours. It is my opinion that her

> emotional problems have been present at this level for at least one year
> and that her low intellect is a lifelong condition. It is also my opinion
> that her emotional problems are likely to worsen if she's placed under
> stress especially that of a job.

(Tr. at 385). However, as previously discussed, Dr. Blanton is not a medical source whose opinion is worthy of deference or special consideration. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Even if he was, his treatment notes are not consistent with his ultimate opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (the weight to be afforded a medical opinion regarding the nature and severity of a plaintiff's impairments depends, among other things, upon the examining and treating relationship the medical source had with the plaintiff, *the evidence the medical source presents to support the opinion*, how consistent the opinion is with the record as a whole, and the specialty of the medical source) (emphasis added). During his mental status examination on the day he offered his opinion, Dr. Blanton noted logical thoughts and conversation. (Tr. at 383). Plaintiff's associations remained intact and she showed flat, but appropriate affect. (Tr. at 383). Plaintiff showed no confusion or evidence of hallucination, delusions, or paranoia. (Tr. at 383). She remained alert and oriented to place, person, and situation. (Tr. at 383). Additionally, Dr. Blanton found Plaintiff's judgment remained fair for work and financial type decisions. (Tr. at 383). He further noted that Plaintiff could shop and handle her own money. (Tr. at 384). Given the record

as a whole, including Dr. Blanton's October 2013 report, substantial evidence supports the ALJ's decision.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Guy's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 27, 2016.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704